{¶ 11} I respectfully dissent. A review of the facts in this case reveals that Ms. Thornton had preserved the statute of limitations against the law firm by refiling within the one-year time frame set out in R.C. 2305.19, the savings statute.
 {¶ 12} Ms. Thornton hired attorney Steven Howland, allegedly a partner in the firm of Hardiman, Buchanan, Howland Trivers, in December 1998 to represent her in a lawsuit. She states that she paid Mr. Howland $3,400.00 over the course of several months. Unbeknownst to her, Mr. Howland's license to practice law was suspended in July 1999.
 {¶ 13} Nonetheless, Mr. Howland had Ms. Thornton come to the office to sign a medical release form in August 1999 and sent Ms. Thornton a letter in December 1999 telling her that her complaint was ready for her to sign for filing. The letter was written on stationery bearing the letterhead "Hardiman, Buchanan, Howland Trivers, attorneys and counselors at law." The letterhead also named four additional attorneys in smaller print.
 {¶ 14} Mr. Howland died in December 2000, but Ms. Thornton did not discover his death or his loss of license until February 27, 2001. She also discovered at that time that her complaint had never been filed. In December 2001, Ms. Thornton filed a pro se complaint for legal malpractice against "Hardiman Hardiman" ("Hardiman I"). In that complaint, she claimed that Mr. Howland was a partner in their firm and that, by allowing him to continue to represent her after he lost his license, the firm had committed malpractice.
 {¶ 15} Ms. Thornton continued to represent herself until less than a month before the scheduled trial of August 13, 2002. Her newly retained counsel did not file a notice of appearance on the record until August 9, 2002, four days before trial. He also filed a motion for a continuance on that date.
 {¶ 16} On the day of the trial, Ms. Thornton appeared without her attorney. The court refused to grant the motion for continuance without Ms. Thornton's counsel present. A little while later that day attorney Tyrone Reed arrived and informed the court that he was substituting for counsel of record, who was out of the country. Mr. Reed told the court that he had no authority to voluntarily dismiss the case, but that he would recommend that action to Ms. Thornton. By that time Ms. Thornton had left the area and could not be found. The trial court then granted summary judgment to one of the parties and dismissed the remaining parties without prejudice.[1]
 {¶ 17} Later that month, on the 26th of August, Ms. Thornton's counsel refiled her complaint, which is the subject in the case at bar, and
 {¶ 18} named all the lawyers at the firm as defendants individually, as well as the firm "Hardiman, Buchanan, Howland Trivers." She alleged that, although they knew Mr. Howland had lost his license to practice law, they allowed him to continue and that he continued with their knowledge, cooperation, and acquiescence when he used the offices and staff and met with clients in the office.
 {¶ 19} All the defendants filed motions for summary judgment, which the trial court granted on July 30, 2003, with a seven-page opinion.
 {¶ 20} Prior to the trial court's granting of the defendants' motions for summary judgment, Ms. Thornton moved to amend her pleadings to include a cause of action for fraud. The defendants had raised a statute of limitations defense against Ms. Thornton's claims because more than a year had passed since the events alleged in the complaint had taken place. As noted above, however, Ms. Thornton had refiled her dismissed complaint within the one-year time limit and therefore had preserved her claim, at least as to some, if not all, the defendants.
 {¶ 21} The statute of limitations for legal malpractice is one year. R.C. 2305.11.[2] "[U]nder R.C. 2305.11(A), an action for legal malpractice accrues and the statute of limitations begins to run when there is a cognizable even whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later."Zimmie v. Calfee, Halter Griswold 1989), 43 Ohio St.3d 54, 58, Citations omitted.
 {¶ 22} The trial court held, and Ms. Thornton admitted, that the cognizable event in this case occurred on February 27, 2001, when Ms. Thornton's became aware that Mr. Howland had died, had previously lost his license to practice law, and had never filed her complaint. Ms. Thornton's first malpractice case was filed December 13, 2001 and dismissed without prejudice by the court on August 13, 2002. The original suit was filed, therefore, within the statute of limitations. The second suit was filed on August 26, 2002. If this case is a refiling under the savings statute, R.C. 2305.19 — that is, after the expiration of the original statute of limitations but within a year of dismissal — then it was timely filed. Because the original statute of limitations would have expired in February of 2002, and the suit was dismissed after February of 2002, the savings statute applies. The case was refiled within a year of dismissal, that is, two weeks after dismissal, so it was preserved by the savings statute.
 {¶ 23} Despite the case which is the subject at bar having been filed within one year of the dismissal of Ms. Thornton's prior case, the trial court held "that because none of the defendants named in plaintiff's current lawsuit were named in her original suit, the plaintiff's claim of `vicarious liability' as to the current defendants would not be entitled to the savings provisions of R.C. 2305.19." Opinion and order granting defendants' motions for summary judgment, July 30, 2003, at 6.
 {¶ 24} I disagree with the court's finding that none of the parties to this suit was a party in the prior suit. Although Ms. Thornton misnamed the firm as "Hardiman Hardiman," she listed the correct address for the firm, which was served at that location. The firm signed for the complaint, filed an answer, and subsequently filed a motion for summary judgment in that case. See Docket for Case Number 456534. There is well-developed case law on such misnomers.
 {¶ 25} "`Where summons is duly served on the real party in interest, who is the one actually intended to be sued, even under a wrong or inaccurate appellation, he must take timely advantage of the error by appropriate plea. If he fails to do so, he will be deemed to have waived the defect and will be concluded by the judgment rendered against him.'"Smith v. Brush-Moore Newspapers, Inc. (1971), 27 Ohio St.2d 111, 113-114, quoting Maloney v. Callahan (1933), 127 Ohio St. 387, paragraph four of the syllabus. In her
 {¶ 26} pro se filing, Thornton intended to sue the firm of Hardiman, Buchanan, Howell Trivers. The entity which Thornton alleges is a firm answered and appeared up until the scheduled trial. Hardiman does not allege that it brought to the attention of the trial court the issue of misnomer. Unless Hardiman raised the issue of the erroneous name contained in the complaint during the pendency of the first filing of the case, it waived any defect in the name captioned on the complaint in the pro se first filing.
 {¶ 27} Defendants' appearance and participation in the proceedings tolled the statute of limitations. In Smith, the Ohio Supreme Court held: "`The statute of limitations will cease to run from the time the real defendant appears and answers in name of the nominal defendant.'"Smith at 114, quoting Boehmke v. Northern Ohio Traction, Co. (1913),88 Ohio St. 156, paragraph two of the syllabus.
 {¶ 28} Further, courts are not sympathetic to defendants who are evasive concerning an incorrect name in a complaint. In Smith, the Supreme Court chastised the defendant for failing to correct the record by informing the court of the correct name of the defendant. The Court, again quoting Boehmke, noted, "`Counsel naively assert that [the actual defendant] had a perfect right to employ counsel to defend for [misnamed defendant]. Yes; but at the risk of being substituted as soon as the plaintiff discovered he had sued the wrong company and that the right one was in court defending. Counsels' mistake was in thinking their client could enjoy the privilege of defending a lawsuit and dodge the responsibility that goes with it.'" Smith at 115, quoting Boehmke at 163-164.
 {¶ 29} By participating in the case, therefore, the firm acknowledged that it was the intended party being sued. The Ohio Supreme Court further explained:
Where one knows himself to be the wrongdoer sought to be made liable in an action of damages for the wrong, and voluntarily appears by his attorney and answers in the name of and ostensibly as another person who was by the plaintiff named as defendant, and served with process in the mistaken belief that the latter person did the wrong, the former person thereby submits himself to the jurisdiction of the court and may be substituted as the real defendant in place of the nominal defendant sued by mistake; and the substituted defendant will be bound by the verdict and judgment rendered against him in the case.
 {¶ 30} Boehmke, supra, paragraph one of the syllabus. In the case at bar, Ms. Thornton had the correct address of the entity or firm she intended to sue, but she had only a partially correct name. See alsoAustin v. Bentley's Entertainment Center, (Sept. 20, 2000), Tuscarawas App. No. 1999 AP 07 0046 ("[i]f a defendant participates in and defends an action, that defendant may be substituted as the party defendant").
The Eleventh District applied this principle to the misnomer:
[I]f a specific denial is not made by the objecting party, challenges to the legal existence of any party, the capacity to sue or to be sued and the authority of the party to sue or be sued are waived.
 {¶ 31} Further, the principles set forth in Civ.R. 15(C) are generally applied in the case of a misnomer. That is the situation here. The party sought to be sued is, in fact, served with process, but in a name other than his own.
 {¶ 32} Lamberty v. Streetsboro Sales Supplies (1987), Portage App. Nos. 1729 1759, 1987 Ohio App. LEXIS 8987, at *5. The courts have overwhelmingly upheld the validity of service on a party who is identified in the pleadings by the wrong name so long as that person had actual notice of the suit. Id. at *6.
 {¶ 33} If parties have been misnamed in a suite, they are required,
 {¶ 34} pursuant to Civ.R. 9(A), to raise the issue "by negative averment." Failure to do so waives the objection. Lamberty at *4-5.
 {¶ 35} As Civ.R. 15(C) states:
(C) Relation back to amendments. Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.
 {¶ 36} In the case at bar, the attorneys who worked under the title of Hardiman, Buchanan, Howland Trivers had received notice of the suit against them, and, in fact, were defended by the first named partner. Clearly, they knew the proper identity of the party being sued. They were not, therefore, prejudiced in their defense. See Hardesty v. Cabotage
(July 22, 1981), Hancock App. No. 5-80-51, 1981 Ohio App. LEXIS 12646, at *14; Andre v. Chillicothe Jeep Sales (Dec. 8, 1983), Franklin App. No. 83AP-780, 1983 Ohio App. LEXIS 15198 at *7; Cook v. Sears (1967)9 Ohio App.2d 197, 206; Taylor v. Victor Equipment Co. (1948),84 Ohio App. 236, 238-239; Integrity Tech. Serv. V. HollandManagement, Medina App. No. 02CA0009-M, 2002-Ohio-5258, ¶ 32.
 {¶ 37} "The common theme running through the case law is that * * * a relation back is permitted only when there has been a mistake as to the identity of the new party and not when there was a mere lack of knowledge as to the proper party." Columbus Bd. of Educ. v. Armstrong Industries,Inc. (1993), 89 Ohio App.3d 846, 855. Here, defendant cannot deny that Ms. Thornton served the proper party in the wrong name. She served the alleged firm at its business address and specifically stated her cause of action, which included the former partners of Mr. Howland.
 {¶ 38} In Benz v. Carter (1988), 55 Ohio App.3d 120, a party was served in his wife's name but the complaint clearly described the auto accident he had been involved in. The court ruled that although the name (and even gender) on the complaint was wrong, defendant had been served at the correct address and the complaint gave sufficient notice of the subject of the suit to permit him to defend against it. Id. at 122. Similarly here, the alleged law firm was aware of the suit and was not prejudiced by the misnomer. It is axiomatic that the spirit of the civil rules favors cases being resolved on their merits, not on pleading deficiencies. Patterson v. V M. Body (1992), 63 Ohio St.3d 573, 577;Peterson v. Teodosio (1973), 34 Ohio St.2d 161, 175.
 {¶ 39} I believe that the trial court erred, therefore, in dismissing Thornton's second amended complaint on the basis that none of the defendants in the second suit was named in the first one. The law firm, although incorrectly named in the first suit, was a party to that case and appeared and defended. The savings statute, therefore, allows Ms. Thornton to pursue her second filing of the case against the firm.
 {¶ 40} Defendant law firm also protests that it no longer existed as a law firm at the time of Mr. Howland's alleged misdeeds. It argues, therefore, that it cannot be held liable. The individuals who served as members of the firm state that, because there was no firm to sue, they cannot be sued as members of a firm and cannot be defendants, not having been named in the first case. As Ms. Thornton points out, however, the individually named persons were all listed on the letterhead of "Hardiman, Buchanan, Howland Trivers." The Ohio Supreme Court has held:
 {¶ 41} [P]ursuant to R.C. 1329.10(C), a plaintiff may commence or maintain an action against a party named only by its fictitious name.
R.C. 1329.10(C) provides that "an action may be commenced or maintainedagainst the user of a trade name or fictitious name whether or not the name has been registered or reported in compliance with section 1329.01
of the Revised Code." (Emphasis added.) R.C. 1329.01(A)(2) defines a "fictitious name" as "a name used in business or trade that is fictitious and that the user has not registered or is not entitled to register as a trade name."
 {¶ 42} Family Med. Found. Inc. v. Bright (2002), 96 Ohio St.3d 183, ¶¶ 5 6. Whether or not the lawyers gave apparent agency to the fictitious firm is an issue of fact and not available to us from the record. Even if they were no longer legally a law firm, to the average lay person they gave the appearance of a law firm. For example, it was alleged that the receptionist answered phone calls with the name on the letterhead, not with the individual name of the attorney being phoned, as is common in practices in which independent attorneys share office space. Thus the next question is, how binding is the law firm's participation in the first case on the people who were named as individuals in the second case.
 {¶ 43} Although the firm now claims that it was not an actual law firm but rather a group of attorneys sharing office space, Ms. Thornton has provided sufficient evidence, if believed, to show that the firm at least held itself out as an agent of Mr. Howland, or that Mr. Howland held himself out as an agent of the firm with their implied consent. Either scenario is a question of fact for the fact-finder to determine on remand.
 {¶ 44} In the second filing of the case, Ms. Thornton's counsel also named each of the persons listed on the letterhead individually. Because none of these persons was named individually in the first filing of the case, a suit directed against each of them as individuals is time-barred. On the other hand, the suit against them as participants in the fictitious firm of Hardiman, Buchanan, Howland Trivers is not time-barred. Each of the individuals named in the complaint could be held liable as agents of the fictitious law firm. Their participation or lack of it is an issue of fact for the fact-finder.
 {¶ 45} Accordingly, I would affirm this case as to the summary judgment motions granted to the individuals named in the complaint, but reverse and remand as to the entity which allegedly held itself out as a law firm and as to the persons who participated in that entity.
 {¶ 46} For the above stated reasons, I dissent.
[1] Although this entry appeared on the docket on August 14, 2002, the day after trial had been scheduled, the case was not officially removed from the docket until September 9, 2003. Thornton could have, therefore, appealed the dismissal of her first filing until October 9, 2003.
I recognize that the continued existence of the first filing during the pendency of the second filing raises a technical question as to the validity of the court's jurisdiction over the second filing. Because the parties acceded to the court's jurisdiction in the second filing, however, I will not address the metaphysical question of whether the first filing prevented the existence of the second filing.
[2] This statute read in pertinent part: "An action for libel, slander, malicious prosecution, or false imprisonment, an action for malpractice other than an action upon a medical, dental, optometric, or chiropractic claim, or an action upon a statute for a penalty or forfeiture shall be commenced within one year after the cause of action accrued, provided that an action by an employee for the payment of unpaid minimum wages, unpaid overtime compensation, or liquidated damages by reason of the nonpayment of minimum wages or overtime compensation shall be commenced within two years after the cause of action accrued.