1997 SD 97

**Richard J. STRATMEYER, Kathryn Lambert, Karla Stoakes, and John V. Engberg, Plaintiffs and Appellees,**

v.

**Gary J. STRATMEYER, Defendant and Appellant.**

No. 19605.

Supreme Court of South Dakota.

Argued Jan. 14, 1997.

Reassigned May 12, 1997.

Decided July 23, 1997.

Rehearing Denied Aug. 28, 1997.

Rick Johnson of Johnson, Eklund, Nicholson, Peterson & Fox, Gregory, for Plaintiffs and Appellees.

Timothy J. Wilka and Rick L. Ramstad of Wilka Law Office, Sioux Falls, for Defendant and Appellant.

SABERS, Justice (on reassignment).

[¶ 1.] In this case, we reconsider whether the South Dakota Legislature intended SDCL 26–10–25 to apply to all acts of intentional sexual abuse or only to those acts of intentional sexual abuse which occurred after the effective date of the statute. *Koenig v. Lambert*, 527 N.W.2d 903 (S.D.1995), held that the Legislature did *not* intend for SDCL 26–10–25 to be retroactive. We now overrule *Koenig* and hold that the South Dakota Legislature intended the statute to apply to all acts of intentional sexual abuse of children.

Therefore, we affirm the judgment of the circuit court, although for a different reason.[1]

[¶ 2.] On July 5, 1995, Richard Stratmeyer, Kathryn Lambert, Karla Stoakes and John Engberg (Plaintiffs) commenced an action against their uncle, Gary Stratmeyer (Defendant), claiming that when they were children, they suffered sexual abuse at his hands, causing each to suffer extreme emotional distress and permanent emotional and psychological damage. Defendant moved to dismiss the complaint based on the three-year statute of limitation for personal injury claims. The trial court denied his motion. After a two-day trial, the jury returned verdicts in favor of Richard and John, but found the statute of limitation barred the claims of Kathryn and Karla.[2] The jury awarded damages of $30,416 to Richard and $20,000 to John. Punitive damages in the amount of $91,250 were awarded, to be equally divided between the prevailing Plaintiffs. Defendant appeals. We affirm.

## FACTS

[¶ 3.] As children, Plaintiffs spent time on their grandparents' farm near Hartford, South Dakota, particularly during the summer. Defendant (the youngest son of their grandparents and brother of their parents)[3] lived on the farm during the time period relevant to Plaintiffs' claims.[4]

[¶ 4.] On December 6, 1994, Richard called his mother to tell her good-bye, as he planned to commit suicide. During that conversation he revealed that, as a child, he was sexually molested by Defendant. He recalls Defendant repeatedly fondling him and forcing him to perform oral sex during Richard's visits to the farm. The molestation occurred from approximately 1974 to 1985, when Richard was between the ages of six and seventeen.[5] He recalls the abuse taking place at various locations on the farm, including a barn, chicken coop, tractor cab, vehicle, the guest bedroom, and the basement of the house. He also remembers Defendant threatening him not to tell anyone about the abuse, but does not recall specifics of the threats.

[¶ 5.] Following Richard's revelation, Kathryn, Karla, and John revealed that they, too, were molested by Defendant. Kathryn recalls being molested by Defendant while visiting the farm during the summer of 1974, when she was nine. She remembered Defendant taking her and her sister Karla, then seven, to an old car in a grove of trees, where he made Kathryn get in the back seat and remove her clothes. He attempted to penetrate her with his penis but failed. He then made Karla get in the back seat and remove her clothes. His attempts to penetrate her also failed. Following that incident, Defendant threatened the girls that they would not be allowed to ride the snowmobile if they told anyone what happened. Karla does not recall this incident.

[¶ 6.] Karla recalls Defendant sexually molesting her and her sister on a different occasion during the same summer. She remembers Defendant molesting them after he caught them looking at his pornographic magazines. On this occasion, he attempted to penetrate Karla with his penis while Kathryn was in the room. Kathryn does not recall this incident.

[¶ 7.] John remembers Defendant molesting him on several occasions during his sum-

---

1. The circuit court denied Defendant's motion for summary judgment and allowed the Plaintiffs to proceed on the theory that the statute of limitation was tolled by Defendant's fraudulent concealment of their cause of action. *See, e.g., Green v. Siegel, Barnett & Schutz,* 1996 SD 146, ¶ 9, 557 N.W.2d 396, 399 (noting that fraudulent concealment by defendant may toll statute of limitation). Our disposition of the case based upon SDCL 26–10–25 forecloses the need to discuss that doctrine in detail.

2. Kathryn and Karla did not appeal.

3. Kathryn, Karla, and Richard are the children of Defendant's brother, Richard Stratmeyer. John is the son of Defendant's sister, Janice Engberg.

4. The first incident of abuse alleged by Plaintiffs occurred in 1974 and the last incident occurred in 1985.

5. Richard can not pinpoint the first time he was abused, but believes the molestation began prior to his sixth birthday. He testified that the first incident which he could specifically recall was not the first time that he was molested.

mer visits in 1978 and 1979. The first time it happened, Defendant pointed a .38 caliber pistol at John's head while he forced him to perform oral sex. Other times, Defendant fondled him and forced him to perform oral sex by restraining him with wrestling holds and squeezing or "smacking" his testicles until he complied. John was between thirteen and fourteen when these incidents occurred.

[¶ 8.] There was testimony of other incidents of abuse and threats. Except for the memories of abuse which Kathryn and Karla do not share, all the Plaintiffs testified that they never forgot being sexually molested by Defendant.

[¶ 9.] On July 5, 1995, Plaintiffs commenced an action against Defendant, alleging permanent emotional and psychological damage as a result of the childhood sexual abuse.[6] They claimed that Defendant accomplished the abuse by taking advantage of the confidential relationship between Plaintiffs and Defendant and that he fraudulently concealed the molestation through threats and intimidation.

[¶ 10.] Defendant denied Plaintiffs' allegations and asserted the statute of limitation as an affirmative defense. He moved for summary judgment, claiming that the action was barred by the three-year statute of limitation provided in SDCL 15–2–14.[7] The trial court denied his motion, concluding that a genuine issue of material fact existed as to whether a confidential relationship existed between the parties and whether Defendant fraudulently concealed "the significance of the acts by way of threats and menacing conduct," so as to toll the statute of limitation. As noted above, the jury returned verdicts in favor of Richard and John. Defendant appeals. Although the tolling effect of "fraudulent concealment" is inapplicable to the circumstances of this case, we affirm on the basis that SDCL 26–10–25 governs this action; that statute applies ret-

roactively to all acts of intentional sexual abuse.

## STANDARD OF REVIEW

[¶ 11.] Statute of limitation questions are normally left for the jury. However, the construction of a statute and its application to particular facts present a question of law, reviewed de novo. *Bosse v. Quam*, 537 N.W.2d 8, 10 (S.D.1995) (citing *Schoenrock v. Tappe*, 419 N.W.2d 197, 201 (S.D. 1988); *Johnson v. Rapid City Softball Ass'n*, 514 N.W.2d 693, 695 (S.D.1994)). We give no deference to the trial court's conclusions of law under a de novo review. *City of Colton v. Schwebach*, 1997 SD 4, ¶ 8, 557 N.W.2d 769, 771. Therefore, "[t]hat the trial court reached its conclusion for a different reason does not prevent this court from affirming based upon the correct reason." *Anderson v. Somers*, 455 N.W.2d 219, 222 (S.D.1990) (citing *Gilbert v. United Nat'l Bank*, 436 N.W.2d 23 (S.D.1989); *Owens v. City of Beresford*, 87 S.D. 8, 201 N.W.2d 890 (1972)).

[¶ 12.] **WHETHER THE PLAINTIFFS' CLAIMS ARE BARRED BY STATUTE OF LIMITATION.**

[¶ 13.] This case is best explained by Justice Konenkamp's early writing in this case as follows:

Imagine being pricked on the arm with a pin. At first, such an intrusion would be disturbing, but with time might seem uneventful. Now imagine the pin carried a dreaded affliction, only discoverable after years of incubation. Such is often the nature of childhood sexual abuse. Many children only realize years later the true significance of the abuse they endured, especially in cases where the molestation occurred at the hands of family members or other trusted individuals. For some children, sexual violation is so traumatic it becomes psychologically self-concealing, if

6. At the time the action was begun, the Plaintiffs' ages were: Kathryn—30, Karla—28, Richard—27, and John—31.

7. That statute provides, in relevant part:
   Except where, in special cases, a different limitation is prescribed by statute, the following civil actions other than for the recovery of real

property can be commenced only within three years after the cause of action shall have accrued:

. . .
   (3) An action for personal injury.
   SDCL 15–2–14(3).

only to preserve sanity. For this reason, our Legislature enacted SDCL 26–10–25 creating a discovery rule for adult survivors of child sex abuse. This statute was intended to be retroactive. *See Koenig v. Lambert,* 527 N.W.2d 903, 907 (S.D.1995) (Sabers, J., concurring in part and dissenting in part). Although I agree ... that fraudulent concealment is inapplicable to the circumstances of this case and thus cannot toll an otherwise expired limitations period, plaintiffs nonetheless have a viable cause of action; SDCL 26–10–25 extended their time for filing because the jury found they "discovered," within the enlarged period, the injuries they suffered.

[¶ 14.] The question is simply whether the Legislature intended SDCL 26–10–25 to apply to all acts of intentional conduct or only to those acts of intentional conduct occurring after the effective date of the statute. SDCL 26–10–25 provides:

> Any civil action based on intentional conduct brought by any person for recovery of damages for injury suffered as a result of childhood sexual abuse shall be commenced within three years of the act alleged to have caused the injury or condition, or three years of the time the victim discovered or reasonably should have discovered that the injury or condition was caused by the act, whichever period expires later.

Also relevant to our analysis is SDCL 26–10–29:

> As used in §§ 26–10–25 to 26–10–29, inclusive, childhood sexual abuse is any act committed by the defendant against the complainant who was less than eighteen years of age at the time of the act and which act would have been a violation of chapter 22–22 or prior laws of similar effect at the time the act was committed which act would have constituted a felony.

[¶ 15.] It is obvious from a plain reading of SDCL 26–10–25 and 26–10–29 that the Legislature intended SDCL 26–10–25 to apply to all acts of intentional childhood sexual abuse conduct. This is so because SDCL 26–10–29 defines childhood sexual abuse as "any act" committed by a defendant which act would have been a violation of SDCL ch. 22–22 (sex offenses) or prior laws of similar effect at the time the act was committed which act would have constituted a felony.

[¶ 16.] SDCL 26–10–25 through 29 were passed as a whole in 1991. 1991 SD Session Laws, ch. 219, §§ 1–5, at 328. We look at the statute as a whole, as well as any enactments relating to the same subject when determining the intent of a statute. *Kayser v. South Dakota State Elec. Comm'n,* 512 N.W.2d 746, 747 (S.D.1994). "A statute is passed as a whole and not in parts or sections and is animated by one general purpose and intent." 2A Sutherland, *Statutes & Statutory Construction,* § 46.05, at 103 (Singer ed., 5th ed.1992). "It is not proper to confine interpretation to the one section to be construed." *Id.* "[I]f retroactive impact is clearly intended for some of the provisions of an act, it seems logical to assume that the legislature intended retroactive impact for them all." *In re Heuermann,* 90 S.D. 312, 321, 240 N.W.2d 603, 608 (1976).

[¶ 17.] If the Legislature did not intend the statute to apply retroactively to all acts of childhood sexual abuse, there would be absolutely no reason to include violations of chapter 22–22 and to incorporate by reference "prior laws of similar effect". SDCL chapter 22–22 did not go into effect until 1967. Clearly, the Legislature intended that violations of SDCL chapter 22–22 would be actionable via 26–10–25 through –29, which became effective in 1991. Equally clear is that the Legislature intended acts in violation of §§ 13.2801, 13.2803, and 13.1727 of SDC (1939); §§ 4092, 4097, and 4098 of SDRC (1919); §§ 325, 330, and 331 of SDCompL (1913); §§ 325, 330, and 331 of SD RPen C (1903); §§ 6521, 6526, and 6527 of the Dakota Territorial Code of 1887; and §§ 320, 325, and 326 of the Pen C. Dakota Territorial Code of 1877 to be actionable as well. If the Legislature had intended SDCL 26–10–25 to apply only to future acts of childhood sexual abuse, it would have simply defined the term and not incorporated by reference SDCL ch. 22–22 or prior laws of similar effect. Therefore, the Legislature obviously intended

SDCL 26–10–25 to apply retroactively in this case.[8]

[¶ 18.] Since the Legislature decided that special protection was necessary for vindication of victims of sexual abuse in the future, it is consistent that it would afford greater protection for acts occurring in the past as well, rather than adhering to a three-year occurrence rule previously provided under SDCL 15–2–14(3) and 15–2–22.[9]

[¶ 19.] The court may look to the public policy to be furthered by retroactive application of the limitation period. *Accord Howell v. Spokane & Inland Empire Blood Bank,* 114 Wash.2d 42, 785 P.2d 815, 818 (1990).

> Sexual abuse at an early age prompts involuntary coping mechanisms which may prevent victims from making the causal connection between the abuse they suffered as children and the psychological problems they experience as adults.
>
> [A] cause of action does not necessarily accrue when the first manifestations of injury occur. The claimant has leeway to not start an action until she knows more about the injury and its probable cause.
>
> The policy justification for applying the statute of limitations to protect defendants from the threat of liability for deeds in the past is unpersuasive in incestuous abuse cases.... Further, the injustice of barring meritorious claims before the claimant knows of the injury outweighs the threat of stale or fraudulent actions.

*Hammer v. Hammer,* 142 Wis.2d 257, 418 N.W.2d 23, 27 (App.1987) (citations & internal quotations omitted); *accord Osland v. Osland,* 442 N.W.2d 907, 909 (N.D.1989) (af-

firming trial court's application of discovery rule where "the severe emotional trauma experienced by [plaintiff] resulted in her being unable to fully understand or discover her cause of action during the applicable statutory limitations period."); *see* Ann Marie Hagen, Note, *Tolling the Statute of Limitations for Adult Survivors of Childhood Sexual Abuse,* 76 IowaLRev 355 (1991) (calling for statutory reform and pointing out that these adult survivors of child sexual abuse are "blamelessly ignorant" of their injuries and should not be re-victimized by allowing their abuser to hide behind a statute of limitation); *see generally* Russell G. Donaldson, Annotation, *Running of Limitations Against Action for Civil Damages for Sexual Abuse of Child,* 9 ALR5th 321 (1993).

[¶ 20.] Even more important, in this state the courts need only look to the statutes themselves to discern public policy. As noted in *Isaac v. State Farm Mutual Automobile Insurance Co.,* 522 N.W.2d 752, 756 n.1 (S.D.1994), the Legislature is the final arbiter of public policy, and it has clearly established South Dakota's public policy in these statutes.

[¶ 21.] Based on the foregoing discussion, SDCL 26–10–25 and SDCL 26–10–29 should be applied retroactively. Accordingly, the Plaintiffs' judgments against Defendant are affirmed.[10]

[¶ 22.] KONENKAMP and GILBERTSON, JJ., concur.

[¶ 23.] MILLER, C.J. and AMUNDSON, J., dissent.

---

**8.** The bulk of the language in this opinion is taken from my special writing in *Koenig,* 527 N.W.2d at 906–08 (Sabers, J., concurring in part & dissenting in part).

**9.** Furthermore, as this court held in *Richards v. Lenz,* 539 N.W.2d 80, 85 (S.D.1995), "if there is any doubt as to which statute applies, such doubt should be resolved in favor of the longer limitation period." (Citing *Morgan v. Baldwin,* 450 N.W.2d 783, 786 (S.D.1990)).

**10.** The dissent fails to address the merits of the retroactivity issue, i.e., that the South Dakota Legislature clearly *intended* the statute to be retroactive and that consequently, the majority in *Koenig* was simply wrong. Instead, it faults the

majority opinion because the South Dakota Legislature has had two opportunities to amend its statutes. We should fix our own mistakes—the Legislature has enough to do in dealing with blizzards, floods, and taxation. Clearly, it does not take legislative action for this court to achieve a legally correct conclusion. *See Cary v. City of Rapid City,* 1997 SD 18, ¶ 14, 559 N.W.2d 891, 894, *overruling State Theatre Co. v. Smith,* 276 N.W.2d 259, 264 (S.D.1979) (declaring unconstitutional a statute which withstood an identical challenge eighteen years earlier); *see also Chambers v. Dakotah Charter, Inc.,* 488 N.W.2d 63, 70 (S.D.1992) (abandoning the lex loci delicti rule in multi-state tort actions). *Koenig* was a mistaken decision and outdated at birth. It should be put to rest now and forever.

MILLER, Chief Justice (dissenting).

[¶ 24.] I respectfully dissent. The majority opinion overrules our holding in *Koenig v. Lambert*, 527 N.W.2d 903 (S.D.1995), without any change in the state of the law or any indication from the legislature that our ruling did not comport with its intent in enacting SDCL 26–10–25. The majority's position is not based on legislative intent or new supporting precedent. Rather it appears to be the sole result of the change in the composition of this Court since our decision in *Koenig*.[11] If this Court's opinions are to have any precedential value, I respectfully submit a change in the membership of this Court is not a sufficient basis to abandon precedent.

[¶ 25.] The intent of a statute must be determined by what the legislature said, not what this Court thinks the legislature should have said. *US West Communications, Inc. v. Public Utilities Commission*, 505 N.W.2d 115, 123 (S.D.1993) (citation omitted). It is not our task to liberally construe statutes to avoid harsh results. *In re Presentation Sisters, Inc.*, 471 N.W.2d 169, 175 (S.D.1991). SDCL 26–10–25 was enacted in 1991. In *Koenig*, we were asked to interpret SDCL 26–10–25 for the first time and determine its applicability to a claim of childhood sexual abuse occurring before its enactment. We did so and concluded the statute of limitations provided by SDCL 26–10–25 applied only to incidents of sexual abuse which occurred after 1991 because "there is no expression of [a retroactive] intention by the South Dakota Legislature." *Koenig*, 527 N.W.2d at 904.

[¶ 26.] For the same reasons set forth in his dissent in *Koenig*, the now-majority writer concludes the legislature intended SDCL 26–10–25 to be applied retroactively. *Koe-*

*nig*, 527 N.W.2d at 906–908 (Sabers, J., concurring in part and dissenting in part). This analysis was not persuasive when this Court interpreted SDCL 26–10–25 in 1995 and should not be held to be so now. Moreover, I assert that this conclusion does not comport with the actions of the legislature in the wake of our original decision. Since *Koenig*, the legislature has had two opportunities to amend SDCL 26–10–25 to abrogate our holding and give the statute retroactive application. Twice it has declined to do so. If the legislature had in fact intended the statute to have retroactive effect it would have been a simple matter to supersede our holding by amending SDCL 26–10–25 to expressly so provide. The legislature's reluctance to take issue with our holding is persuasive evidence it did not intend the statute to apply retroactively. Any doubt concerning the intended application of SDCL 26–10–25 has been resolved.

[¶ 27.] Though the majority's ultimate holding responds to the sympathies raised by the facts of this case, it is my belief that such an application was not contemplated by SDCL 26–10–25; only the legislature can make this statute retroactive. When the state of the law remains constant, this Court's function is to ensure the law's stability and predictability.[12]

[¶ 28.] I am authorized to state that Justice AMUNDSON joins in this dissent.

---

11. At the time *Koenig v. Lambert* was decided, Justice Wuest (Ret.) was still a voting member of this Court. Justice Konenkamp was disqualified from participating in our decision because of his involvement in the case as a trial court judge. Justice Gilbertson was not yet a member of this Court at the time of our decision. Circuit Judge Dobberpuhl, sitting for Justice Konenkamp, wrote our majority opinion. 527 N.W.2d 903 (S.D.1995).

12. This is not to say that this Court is without remedy when circumstances have changed or

our original decision was in error. " 'Wisdom too often never comes, and so one ought not to reject it merely because it comes late.' " *Walz v. City of Hudson*, 327 N.W.2d 120, 124 (S.D.1982) (Wollman, J., concurring specially) (quoting *Henslee v. Union Planters National Bank & Trust Co.*, 335 U.S. 595, 600, 69 S.Ct. 290, 293, 93 L.Ed. 259, 264 (1949) (Frankfurter, J., dissenting)). I submit, however, our decision in *Koenig* was a proper determination of the legislature's intent in enacting SDCL 26–10–25 and is supported by the legislature's response to the holding.