**COLUMBUS BOARD OF EDUCATION, Appellant,**

v.

**ARMSTRONG WORLD INDUSTRIES, INC.; Pfizer, Inc. et al., Appellees.**

[Cite as *Columbus Bd. of Edn. v. Armstrong World Industries, Inc.* (1993), 89 Ohio App.3d 846.]

Court of Appeals of Ohio,
Franklin County.

No. 93AP–119.

Decided Aug. 17, 1993.

*Carlile, Patchen & Murphy, James C. Carpenter, John W. Seidensticker* and *Jan E. Hensel,* for appellant.

*Barron, Peck & Bennie* and *David W. Peck,* for appellee Pfizer, Inc.

*Arter & Hadden, David C. Patterson* and *Nancy Manougian,* for appellee Basic, Inc.

STRAUSBAUGH, Judge.

On March 30, 1984, the Columbus Board of Education ("board") filed suit in the Franklin County Court of Common Pleas against twenty-eight named defendants, manufacturers of asbestos and asbestos-containing products. The complaint set forth various claims for relief, including negligence, fraud, breach of implied warranties, nuisance and strict liability in tort. The board sought to recover damages for the cost of abating the asbestos found in particular schools of the Columbus public school system. On February 25, 1986, the board amended its complaint and added Basic, Inc. as a defendant to the action. Eventually, the

board dismissed all of the original defendants except Pfizer, Inc. ("Pfizer") and the newly added Basic, Inc. ("Basic"). The board also dismissed all but the strict liability claims.

Both Pfizer and Basic filed motions for summary judgment, each contending that the board's suit was barred by the applicable statute of limitations. The trial court granted Pfizer's and Basic's motions for summary judgment, stating that under the authority of *Beavercreek Local Schools v. Basic, Inc.* (1991), 71 Ohio App.3d 669, 595 N.E.2d 360, the board's cause of action accrued in 1978 and, therefore, the action was time-barred under R.C. 2305.09(D). The board (hereinafter "appellant") has appealed to this court, assigning a single error for our consideration:

"The trial court erred, as a matter of law, in entering summary judgment against plaintiff on the statute of limitations."

Appellant's suit is one for injury to property arising out of the presence of asbestos in Columbus public schools. Asbestos-containing materials were installed in Columbus public schools in the late fifties and early sixties. It is now known that asbestos is a carcinogen and can cause lung cancer, mesothelioma, and asbestosis, among other diseases. Adding to the insidiousness of asbestos is the fact that there is a latency period of approximately twenty to forty years between initial exposure and appearance of the disease.

According to the decision of the trial court and the record herein, appellant was first made aware of the potential danger of asbestos in mid–1978 through information from the United States Department of Health, Education and Welfare ("HEW"), and news reports from the East Coast concerning sprayed-on asbestos in schools. In the fall of 1978, Stephen Vargo, head of the Department of Facility Planning for Columbus public schools, was contacted by Neil Marquard of the Ohio Industrial Commission and was offered assistance regarding the possibility of finding asbestos in Columbus public schools. Vargo then contacted appellant's supervising architect, who confirmed that certain schools did in fact contain asbestos.

In November 1978, thirteen Columbus schools were tested by Marquard and the Ohio Safety and Hygiene Division. Air and bulk samples of acoustical plaster in the ceilings were taken, and the results were positive for the presence of asbestos. On November 17, 1978, Vargo and Marquard had a conversation regarding the results of the tests. Vargo's notes from that conversation indicated that, based on the results of the tests, there was no immediate hazard. Portions of Vargo's notes stated that fiber counts were "low" and that one "can't even say [there was] any asbestos in [the] air."

Marquard testified that he had not reached a conclusion as to the hazardousness of the asbestos found in the thirteen schools. In an affidavit, Vargo stated that he understood that the results showed no airborne asbestos fibers and, therefore, he did not believe there was any hazard in 1978. Hence, he stated he had no basis to advise appellant or the superintendent that any health hazard existed. A *Columbus Dispatch* news report, dated December 22, 1978, indicated Vargo stated that the hard plaster used in the Columbus public schools had not caused the problems associated with sprayed-on asbestos and that he would be contacting experts to determine if the ceilings should be encapsulated.

In notes dated December 6, 1978, Vargo stated that sprayed-on asbestos is "bad" and cementitious asbestos was "no problem." In a memo dated December 21, 1978, Vargo told Dr. Joseph Davis, the superintendent at the time, that testing of the thirteen schools indicated no airborne asbestos fibers and pointed out that the material used by Columbus was a hard, cementitious type and "not the sprayed on type that had been a problem elsewhere."

In 1979, the United States Environmental Protection Agency ("EPA") published what is commonly referred to as the "Orange Book." This publication contained background information regarding asbestos in schools and provided suggestions for the inspecting, testing and correcting of asbestos in schools. Although the publication stated that any exposure to asbestos should be eliminated or controlled, it went on to state that only certain kinds of asbestos-containing materials were considered hazardous. The soft or friable asbestos-containing materials were said to be the ones that can cause contamination and exposure problems. Sprayed-on materials are usually soft. However, hard materials were said generally not to create exposure problems. In 1979, there were no federal laws or regulations regarding asbestos in schools.

According to Vargo's deposition, Windsor Elementary School was tested in late 1979 or early 1980. Vargo testified that ceiling material in Windsor Elementary was removed in 1980 or 1981. Vargo stated that the material was friable. This was the first abatement of asbestos performed in a Columbus public school. In 1983, other abatement work was performed in various schools. Although documents reflecting abatement work are referred to in depositions, none was made part of the record here.

In 1983, the EPA updated the Orange Book with what has been commonly referred to as the "Blue Book." The purpose of this publication was to inform officials of new developments and information concerning asbestos control. In addition, it briefly described a new set of EPA regulations known as the "Asbestos-in-Schools Rule." These regulations required schools to inspect, sample and analyze friable materials to determine the presence of asbestos. If friable asbestos was detected, notification to school employees and parent-teacher

groups was required. The intent of these regulations was to locate asbestos materials and alert employees and parents of the presence of asbestos. The regulations contained no standards for airborne asbestos concentrations, exposure levels or abatement requirements in schools. These regulations became effective on June 28, 1982, and schools had to comply by May 27, 1983.

On March 23, 1983, a class action suit was filed in the United States District Court for the Eastern District of Pennsylvania, of which appellant was made a class member. The suit was for damages for the cost of removing asbestos-containing materials from schools. Pfizer was an original defendant, and Basic was added December 15, 1986. Appellant opted out of the suit on November 12, 1987. Appellant filed this suit in March 1984, and it appears that abatement activity has continued since.

The sole issue before this court is when the cause of action accrued for statute of limitations purposes. Since appellant's suit is for injury to property, R.C. 2305.09(D) applies and states, in pertinent part:

"An action for any of the following causes shall be brought within four years after the cause thereof accrued:

" * * *

"(D) For an injury to the rights of the plaintiff not arising on contract nor enumerated in sections 2305.10 to 2305.12, inclusive, 2305.14 and 1304.29 of the Revised Code."

The Supreme Court of Ohio has held that "[a]bsent legislative definition, it is left to the judiciary to determine when a cause 'arose' for purposes of statutes of limitations." *O'Stricker v. Jim Walter Corp.* (1983), 4 Ohio St.3d 84, 4 OBR 335, 447 N.E.2d 727, paragraph one of the syllabus. Since R.C. 2305.09(D) contains no legislative definition, we must determine the proper standard for determining when the cause of action arose in the case.

Appellant has set forth alternative theories as to how to determine when the four-year period began to run. Both parties contend that the discovery rule applies but, in applying it, come up with different results. In essence, the discovery rule states that the cause of action accrues when the plaintiff knew or, in the exercise of reasonable diligence, should have known, of the injury. See *O'Stricker*, paragraph two of the syllabus, and *Melnyk v. Cleveland Clinic* (1972), 32 Ohio St.2d 198, 61 O.O.2d 430, 290 N.E.2d 916. We must first decide whether the discovery rule should be applied to this case.

The discovery rule has been applied most often in medical malpractice cases. The underlying rationale for the rule is that the injury complained of may not manifest itself immediately and, therefore, it would be unfair to preclude a person

from asserting a claim when discovery of the injury comes so far after the negligent act. Examples of this include latent diseases and foreign-object cases. In *O'Stricker,* the discovery rule was applied to a cause of action for bodily injury caused by exposure to asbestos. The Supreme Court of Ohio recognized that with asbestos, injury does not occur contemporaneously with exposure, but instead can have a latency period of over twenty years. *O'Stricker,* 4 Ohio St.3d at 86–87, 4 OBR at 337, 447 N.E.2d at 729. Although the case at bar involves property damage and not bodily injury, appellant's situation is analogous and, therefore, the underlying rationale for use of the rule applies.

Appellant's property is damaged because it contains material that is *now* known to cause cancer and other diseases and is *now* the subject of federal regulation and recommendations. Similar to the person physically injured by exposure to asbestos, appellant was for some time unaware that it had been injured. Despite the fact that asbestos was linked to certain cancers as far back as 1948, there was little, if any, regulation concerning its use until 1972, when the Occupational Safety and Health Administration promulgated airborne-exposure standards. See United States Environmental Protection Agency, "Guidance for Controlling Asbestos–Containing Materials in Buildings" (1985 Edition). Even then, these standards were for the purpose of protecting those persons who worked with asbestos in an industrial setting and not those who merely worked or went to school in a building that contained asbestos. Even the methods of testing for airborne fibers has changed since appellant was first told that its levels were either low or nonexistent. Indeed, in testimony made part of the record herein, former EPA employee David W. Mayer testified that the EPA issued its different publications in part because the information they contained kept changing.

Like so many other products, the health risks associated with asbestos were not discovered until long after its widespread use by the public. Because of the nature of asbestos and the ever-changing data available regarding the hazards of its presence in buildings, we believe application of the discovery rule in asbestos property damage cases is the most equitable method and most in line with the rationale behind statutes of limitations. See *O'Stricker,* 4 Ohio St.3d at 88–89, 4 OBR at 339, 447 N.E.2d at 730–731.

■ The question then becomes when did appellant know or when should appellant have known that its property was damaged. Pfizer and Basic contend that appellant knew it had been injured in 1978 when appellant became aware that asbestos was *potentially* harmful. Appellant, although not stating a specific date of accrual, argues that reasonable minds could differ as to whether it knew or should have known it was injured in 1978 and that, therefore, summary judgment was inappropriate. Alternatively, appellant contends that the "cogniza-

ble event" rule, an extension of the discovery rule, should be applied to find that the cause of action accrued in 1983 when appellant was included in the class action suit filed in federal court in Pennsylvania.

The Supreme Court of Ohio has extended the cognizable event rule only to medical malpractice cases and we will not extend it to the case at bar. Instead, we apply the discovery rule and find, construing the evidence most strongly in favor of appellant, the cause of action accrued when the first abatement occurred. Vargo testified that this occurred in 1980 or 1981 at Windsor Elementary.

The record shows that appellant first became aware of the *potential* hazard of asbestos in 1978 when it began receiving information from HEW and news reports. Upon learning this, appellant did its own research and found its schools contained asbestos but not the type which had been the subject of most of the reports. The results of air sampling showed little, if any, airborne fibers. In addition, Vargo testified that the fact that appellant's buildings may have contained asbestos did not "have much relationship at all" to the sale of any buildings and that it was not a point of negotiation as far as an increase or decrease in price. Accordingly, we hold that the record, including exhibits and testimony, indicates that in 1978, appellant could reasonably have believed that no danger from asbestos existed in its schools and that, therefore, its property had not been damaged.

Appellee contends and the trial court held that the decision in *Beavercreek* controls and, under its authority, appellant's cause of action accrued in 1978. We believe, however, that the facts are distinguishable. More important, however, we believe that the court's analysis of when the cause of action accrued in *Beavercreek* comports with our holding here.

There is no question that the facts in *Beavercreek* and the facts here are similar. The causes of action are the same and at least one of the parties is the same. As in this case, the school district in *Beavercreek* first gained knowledge of the potential danger of asbestos from information and literature from various sources and, based on this, investigated and then conducted tests which indicated low fiber counts. The school district was told that there appeared to be no health hazard. However, the school district was also told that noticeable deterioration was detected. A list of recommendations was given to the school district and it was "strongly suggested that the undamaged acoustic plastered ceilings be painted or coated with a good quality latex paint." *Id.*, 71 Ohio App.3d at 687, 595 N.E.2d at 371.

Appellant never received such detailed recommendations for abatement. Indeed, the only evidence as to recommendations given to appellant shows that Vargo was told, as indicated by his November 17, 1978 notes, only that Battelle Memorial Institute was studying a sealing material. In addition, a December 21,

1978 memo stated that appellant was planning to meet with Battelle to discuss the best way to seal the ceilings *if* the need arose or *if* appellant wanted to know. The December 22, 1978 *Dispatch* article also indicated that appellant was planning to check with experts as to whether the ceilings should be encapsulated. We cannot blame appellant for investigating the various options that it may have had to consider, and we do not now hold that such information-gathering charged it with knowledge that its property was therefore damaged.

The court in *Beavercreek* held that the cause of action accrued in June 1980 when the school district, in response to detailed recommendations, *abated* by encapsulating ceilings. *Id.,* 71 Ohio App.3d at 688, 595 N.E.2d at 372. The court stated that as of June 1980, not only had the school district investigated the problem but it "took remedial measures * * * to prevent risk of asbestos contamination * * *." *Id.* at 687–688, 595 N.E.2d at 371–372. In this case, the first abatement took place at Windsor Elementary, at the latest, in 1981. Appellant had been receiving information regarding asbestos for approximately two years, had surveyed its schools and had conducted tests. The knowledge appellant possessed in 1981 was sufficient to lead it to conclude that one of its schools contained friable asbestos material which it believed was hazardous and for which it had to expend money in order to repair. At this point, appellant either knew or should have known that its property had been damaged. Since appellant's suit was filed in March 1984, the four-year statute of limitations was met. Summary judgment, therefore, was inappropriate, but only as to Pfizer.

■ A problem arises as to Basic because it was not added as a defendant until February 25, 1986. The question becomes whether the amendment adding Basic relates back to the original complaint. Civ.R. 15(C) applies and states, in pertinent part:

"Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him." [1]

---

1. The Ohio rule is substantially the same as the federal rule. However, there is little by way of Ohio cases addressing the relation-back doctrine and the *addition* of new parties and, therefore, federal case law will be utilized where needed.

The primary purpose of Civ.R. 15(C) is to preserve those actions which have been filed against the wrong person or entity, either through a mistaken identity or misnomer. See *Littleton v. Good Samaritan Hosp. & Health Ctr.* (1988), 39 Ohio St.3d 86, 101, 529 N.E.2d 449, 462. However, the rule does allow the addition of a completely new party provided the requirements under the rule have been met. Those requirements are: (1) the pleading, as amended, relates to the same conduct, transaction or occurrence set forth in the original pleading; (2) the plaintiff must show that, within the period provided by law for commencing the action, the new party has received such notice of the institution of the action that the new party will not be prejudiced in maintaining a defense on the merits; and (3) the defendant knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the defendant. See *Beavercreek,* 71 Ohio App.3d at 690, 595 N.E.2d at 373, citing *Varlack v. SWC Caribbean, Inc.* (C.A.3, 1977), 550 F.2d 171 (other citation omitted).

The amended complaint here sets forth the same conduct as in the original complaint and; therefore, the first requirement has been met. The second requirement has also been met. Basic is a wholly owned subsidiary of Combustion Engineering, Inc. ("Combustion"), an original defendant to this action. Basic and Combustion share the same statutory agent and legal representation. Under the identity-of-interest doctrine, the institution of the action against Combustion served as constructive notice of the action to Basic because the two parties are so closely related in business. See *Hernandez Jimenez v. Calero Toledo* (C.A.1, 1979), 604 F.2d 99, 102–103, and *Stauffer v. Isaly Dairy Co.* (1965), 4 Ohio App.2d 15, 33 O.O.2d 44, 211 N.E.2d 72. However, the relation back of the amendment fails because the third requirement has not been met. Appellant has failed to show that Basic either knew or should have known that, but for a mistake concerning Basic's identity, the action would have originally been brought against it.

The common theme running through the case law is that, with respect to the third requirement, a relation back is permitted only when there has been a mistake as to the identity of the new party and not when there was a mere lack of knowledge as to the proper party. See *Beavercreek,* 71 Ohio App.3d at 691, 595 N.E.2d at 374; *Wood v. Worachek* (C.A.7, 1980), 618 F.2d 1225; and *Rylewicz v. Beaton Serv., Ltd.* (C.A.7, 1989), 888 F.2d 1175, 1181.

Here, appellant has set forth no evidence showing a mistake on its part as to the identity of Basic. Indeed, the only evidence of why Basic was not added until later is contained in appellant's motion for leave to add Basic. The text of this motion states, in pertinent part:

"From approximately 1955 to 1962[,] plaintiff has reason to believe that the product [Kilnoise] was manufactured by Basic, Inc. Although there is a relationship between defendant Combustion * * * and Basic * * *, *it has now become clear* to the plaintiff that in order to achieve a complete disposition of the issue of liability for Kilnoise it is necessary to have Basic * * * as a defendant in this action.

" * * *

" * * * [T]he plaintiff has reason to believe that the product was *actually* manufactured by Basic * * *." (Emphasis added.)

It is clear from this motion that at the time of the original complaint, appellant lacked knowledge of the proper parties. This is insufficient to meet the third requirement and, therefore, the amended complaint did not relate back. Hence, Basic cannot be maintained as a party under the relation-back doctrine.

Appellant also contends that its claim against Basic is not time-barred because the statute of limitations was tolled by the filing of the class action in Pennsylvania. The class action was filed March 23, 1983, but Basic was not added as a defendant until December 15, 1986. Appellant contends that the statute of limitations did not begin to run until November 12, 1987, the day it opted out of the class. However, as with the amended complaint in this suit, appellant has failed to show that its failure to name Basic as an original defendant in the class action was due to a mistake or misnomer and not because appellant lacked knowledge as to the proper party. Therefore, the amended class action complaint did not relate back to the original class action complaint. Because the cause of action in this case accrued in 1981, adding Basic as a party to the class action in 1986 was untimely under Ohio's four-year statute of limitations. See *Beavercreek*, 71 Ohio App.3d at 691, 595 N.E.2d at 374. Thus, the filing of the class action suit did not toll the running of the statute of limitations as to Basic.

Appellant further contends that the continuous tort doctrine applies and that, as long as asbestos remains in its buildings, the statute of limitations does not begin to run. The nature of this cause of action is such that the continuous tort doctrine does not apply. The doctrine connotes a continuing injury, whereas here, the injury—property damage—is not continuing. Appellant argues that because asbestos still remains in its schools, fibers are continuously released and, therefore, appellant's injury is continuous. While this rationale may be true in bodily injury cases and a select few other cases, it has no applicability in this particular property damage suit.

We have previously determined that the most equitable and rational method of determining when the cause of action accrued is when the appellant knew or

should have known it was injured. In light of that discussion, we reject appellant's argument that Basic's actions constitute a continuing tort.

■ In its last argument, appellant contends that Basic can be maintained as a party to this action because newly enacted R.C. 2305.091 applies. R.C. 2305.091 became effective on October 8, 1992, and states, in pertinent part:

"(B) A cause of action for any removal, measures, or reimbursement described in divisions (A)(1) to (4) of this section accrues upon the date that the board of education is informed by an official of a state, county, or local health department or of the United States environmental protection agency, the Ohio environmental protection agency, or the industrial commission who has conducted an inspection for asbestos or who has received test data concerning asbestos located in a building or other structure that is owned by the board of education, that asbestos or materials that contain asbestos in any building or other structure that is owned by the board of education should be removed from the building or other structure or be encapsulated or otherwise maintained because the asbestos poses a health hazard or risk to persons who use the building or other structure."

Appellant argues that application of R.C. 2305.091, which was not in effect at the time this suit was filed, is proper because the statute was expressly made retroactive or, in the alternative, because the legislature did not create a new statute of limitations but merely was giving guidance as to how R.C. 2305.09(D) should be applied in asbestos-property damage cases.

R.C. 1.48 states: "A statute is presumed to be prospective in its operation unless expressly made retrospective." In *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 522 N.E.2d 489, paragraph one of the syllabus, the Supreme Court of Ohio held that the threshold issue in determining whether a statute may be applied retroactively is whether the legislature expressed that the statute so applies. The Supreme Court further stated that "where 'there is no *clear* indication of retroactive application, then the statute may *only* apply to cases which arise subsequent to its enactment.'" *Id.* at 106, 522 N.E.2d at 495, citing *Kiser v. Coleman* (1986), 28 Ohio St.3d 259, 262, 28 OBR 337, 339, 503 N.E.2d 753, 756. R.C. 2305.091(C) states: "This section applies to asbestos, and material that contains asbestos, that is or was installed in a building or other structure prior to, on, or after the effective date of this section."

The above language does not constitute a clear indication that the statute is to be applied retroactively. Instead, a natural reading of the statute reflects an awareness that most asbestos-containing products were installed in buildings decades ago and that fact alone will not bar application of the new statute. R.C. 2305.091(C) does not address pending cases or cases where the cause of action

has already accrued. There being no clear indication that it be applied retroactively, R.C. 2305.091 cannot be applied to this case.

In the alternative, appellant contends that R.C. 2305.091 is not a new statute of limitations but merely a clarification or guide as to how to apply the discovery rule in asbestos-property damage cases. Appellant argues that this court should look to R.C. 2305.091 as instructive in determining how we define the common-law discovery rule. In *O'Stricker*, as in this case, the original statute of limitations contained no definition as to when the cause of action accrued. The Supreme Court held that because there was no legislative definition, the judiciary could determine when the cause of action accrued. *O'Stricker*, paragraph one of the syllabus. The Supreme Court used the new statute, which had adopted the discovery rule, as instructive in determining when the cause of action arose under the old statute. The Supreme Court looked at the type of case involved, bodily injury due to asbestos exposure, and, based on that, adopted the discovery rule applied in other latent injury cases.

Here, appellant essentially asks us not only to use R.C. 2305.091 as instructive, but to adopt it in its entirety as the standard to be applied in this case. If we adopt appellant's argument, then the evidence shows that appellant's cause of action probably did not accrue until 1985 when the EPA published its "Purple Book." Although there were no federal regulations requiring abatement, the publication offered detailed recommendations for the inspection and maintenance of asbestos. The publication stated that despite the absence of federal regulations, the prudent building owner must take steps to limit exposure to asbestos. See "Guidance for Controlling Asbestos–Containing Materials in Buildings," *supra*, at S–1. These steps included inspection, detection of friable materials and assessment of the likelihood of fiber release. The report went on to state that an operation and maintenance program should be continued until all asbestos, including the type present in appellant's buildings, is removed.

In contending that the standard contained in R.C. 2305.091 should be the standard we adopt in this case, appellant asks us to hold that its cause of action accrued *after* it filed this suit and *after* it knew it had been injured. We believe that neither *O'Stricker* nor the facts in this case compel such a holding. First, the *O'Stricker* court used the new statute as instruction only and not as mandate. Therefore, we are not compelled to use the new statute at all in deciding when appellant's cause of action accrued. However, our application of the common-law discovery rule to the facts in this case is not significantly different from the rationale behind the standard in the new statute.

The new statute states that a school board's cause of action accrues when it is told by a governmental agency that it should abate because the asbestos in its schools poses a health hazard. Applying the common-law discovery rule, we held

that appellant's cause of action accrued when it first abated because it believed a health hazard existed. Thus, the only real difference between the discovery rule as applied in this case and the standard in the new statute is that appellant itself discovered its injury and, therefore, appellant's cause of action accrued before it was officially informed by a governmental agency that it should abate due to a health hazard.

Under the facts of this case, it would be unsound to hold that appellant's cause of action did not accrue until a governmental agency informed it that it should abate when appellant already made an informed decision that abatement was necessary. Therefore, even using the abatement language in the new statute as instructive, we believe applying the common-law discovery rule to find that appellant's cause of action accrued in 1981 with the first abatement is the most logical and equitable outcome. Hence, Basic cannot be maintained as a party to this action.

Having held that appellant's cause of action accrued in 1981, summary judgment was inappropriate as to Pfizer, an original defendant to this action. However, having rejected each of appellant's alternative arguments, summary judgment was appropriate as to Basic. Therefore, appellant's sole assignment of error is sustained as to Pfizer, and overruled as to Basic. The judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and this cause is remanded for further appropriate proceedings.

*Judgment affirmed in part,*
*reversed in part,*
*and cause remanded.*

PEGGY BRYANT, P.J., and TYACK, J., concur.

DEAN STRAUSBAUGH, J., retired, of the Tenth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.