[Cite as *Foster v. Foster*, 2018-Ohio-1961.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 106173**

**ANTHONY FOSTER**

PLAINTIFF-APPELLANT

vs.

**ERAL M. FOSTER, ET AL.**

DEFENDANTS-APPELLEES

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-16-866624

**BEFORE:** Celebrezze, J., McCormack, P.J., and Keough, J.

**RELEASED AND JOURNALIZED:** May 17, 2018

**ATTORNEY FOR APPELLANT**

Mitchell L. Alperin
29325 Chagrin Boulevard, Suite 305
Pepper Pike, Ohio 44122


**ATTORNEY FOR APPELLEES**

Michael A. Heller
Mike Heller Law, L.L.C.
333 Babbit Road, Suite 233
Euclid, Ohio 44123


FRANK D. CELEBREZZE, JR., J.:

{¶1} Plaintiff-appellant, Anthony Foster ("appellant"), appeals the grant of summary judgment in favor of defendants-appellees, Eral Foster ("Eral"), Velma Knight ("Knight"), and Cleveland Suburban Homes Realty Company (collectively "appellees"). Appellant argues that the trial court erred by granting appellees' summary judgment motion because a genuine issue of material fact exists regarding when the applicable statute of limitations began to run. After a thorough review of the record and law, this court affirms.

## I. Factual and Procedural History

{¶2} The instant matter arose from a dispute regarding a real estate transaction involving appellant's house, located at 3601 East 106th Street, Cleveland, Ohio. In September 2006, appellant contacted his brother Eral and retained appellees to represent him in the sale of his house. Eral participated in the transaction as appellant's agent, and Knight was involved in the

transaction as a broker. The parties agreed that appellant would net a minimum of $35,000 from the sale.

{¶3} Appellees procured a buyer, Faruq Husam Adeen, in February 2007. Adeen agreed to purchase the house for $83,000 on the condition that appellant contributed $43,020 for repairs and updating. Appellant would net $35,000 from the transaction. Closing was set for February 28, 2007. Appellees advised appellant that Adeen was having issues obtaining the requisite financing.

{¶4} While Adeen was in the process of securing financing for the purchase, appellant obtained a buyer on his own that agreed to pay more than Adeen. Appellant asked Eral to terminate the agreement with Adeen. Eral advised appellant that the purchase agreement with Adeen could not be terminated unless Adeen was unable to obtain the requisite financing.

{¶5} Appellant's house sold on March 28, 2007. Appellant and his wife went to the title company, Heights Title, to sign the closing documents. Appellant alleges that he and his wife were rushed through the process of signing the documents without having an opportunity to review them.

{¶6} Eral picked up appellant's check and the closing documents from the title company and provided appellant a check for $25,000. Appellant discovered that Adeen was not listed as the buyer on the closing documents. Appellant asked Eral about the discrepancy with the buyer's name and also inquired why he received $25,000 rather than the $35,000 they had agreed upon. Eral asserted that the discrepancy was a clerical mistake and that the $10,000 shortage was based on outstanding utility bills and taxes. Eral purportedly agreed to give some of the money he earned from his commission to appellant. Eral did not provide the original closing documents to appellant and did not give a portion of his commission to appellant.

{¶7} Appellant filed a complaint with the Ohio Department of Commerce's Division of Real Estate and Professional Licensing on May 30, 2007 ("DOC complaint"). In the "Nature of Your Complaint" section, appellant alleged that Eral threatened him with a lawsuit, promised him something that was not in the contract, his agent was not loyal to him or his interests, did not provide an agency disclosure form to him, did not give him copies of paperwork that he signed or requested, lied to him about the transaction, discriminated against him or members of his family, did not deliver his offer or present an offer to him, changed a form or document without his permission, tried to sell the property without his consent, did not tell him that he had a relationship with the other party, and did not follow his instructions. Appellant provided the following details in support of his DOC complaint:

On or around September of 2006, I was in distress and needed to sell my house, so I contacted my brother Eral Foster because he has a realty company. The agreement was for me to get back $35,000 minus any liens & taxes, and the buyer was to pay all other costs involved with the [sale].

On January 18th, Joseph Sheppard * * * and I, sign a purchase agreement that I terminated because the buyer tried to low ball me.

On February 06, 2007, I sign a purchase agreement to sell my house to [Faruq] Adeen. The closing date was set for Feb. 28th. The week of closing [Eral] called me to inform me that the buyer was having trouble with the financing company. I then ask [Eral] if I could get out of the agreement because first, were [sic] not closing on time, and second I have another buyer that willing to pay ten thousand more for the property and one thousand earnest money. Eral's response to me was no! you can't, you have to wait until the buyer financing fell through, plus the buyer still wants the house.

Finally, on March 28, I go to the title company to sign closing documents. (all this time I think I'm still selling my house to [Adeen].) I notice the amount I was getting back was incorrect. The escrow officer quickly tried to explain that some item the amount was increased such as the water bill and county taxes. I didn't stop the transaction then because I didn't know I could and I was going to Eral's office the next day for an explanation, and because he and I had a verbal agreement that he would give me a break on his commission to make up the difference that I was short. When I got home from the title company, I reviewed

the papers and realized that not only was the amount I received back was not correct but the buyer was also wrong.

The next day at Eral's office we received the check and Eral's response to why the shortage was the same as the escrow officers and he still insisted that [Adeen] was the buyer of the property. So when I asked about our verbal agreement to give me some money back off his commission he said he was busy right now but to give him some time to see what he could do. Still not satisfied I review all the papers and on the settlement statement the addition cost did not add up to my losses and Joseph Sheppard the first buyer who I did not and do not want to sell my house and [Ockington] the wrong buyer has the same address. Getting nowhere with Eral I consulted an attorney who advised me to ask the title company for a copy of the purchase agree-ment, which I did and discovered that without my consent or knowledge, on March 6, 2007 someone from [Eral's] office Cleveland-Suburban home Realty Co. entered into a new purchase agreement with a new buyer "Scott Ockington" and they forged my signature on this same document, then submitted the agreement to the title company. I tried to resolve this matter with Eral, several times by phone and in person and each time Eral [refused] to get out the original paper work involved with this and now he has no knowledge of our verbal agreement "he doesn't recall having said he was giving me money back from his commission." So this brings me to you.

{¶8} The Ohio Real Estate Commission (hereinafter "the Commission") held a hearing on appellant's allegations on April 6, 2011. The issue before the Commission was whether Eral Foster violated R.C. 4735.18 and whether he should be disciplined for any violations. The Commission concluded that Eral Foster violated R.C. 4735.18 during the sale of appellant's house. Specifically, the Commission determined, in relevant part, that Eral committed the following violations:

1. Failed to endeavor to maintain and establish high standards of professional conduct and integrity in dealings with members of the public as well as with fellow licensees and, further, seek to avoid even the appearance of impropriety in any activities as a licensee when after closing was scheduled with purchaser [Adeen], [Eral] prepared, agreed to prepare, presented, agreed to present, and/or executed a purchase contract with a different purchaser, Scott Ockington, for the subject property and closing then went forward with [Ockington] as the purchaser. This constitutes a violation of R.C. 4735.18(A)(6), misconduct, as it incorporates the Canons of Ethics, Section I, Article 1.

* * *

3. Failed to exercise reasonable skill and care when [Eral] allowed [appellant], the seller, to enter into two concurrent purchase contracts for the same property with two differen[t] purchasers in violation of R.C. 4735.18(A)(9) as it incorporates R.C. 4735.62(A).

4. Engaged in misconduct when [Eral] provided purchaser [Ockington] a residential property disclosure form that was previously signed and dated by prior potential purchaser, Joseph Sheppard. This conduct is in violation of R.C. 4735.18(A)(6).

5. Failed to keep complete and accurate records of the transaction for a period of three years from the date of the transaction in violation of R.C. 4735.18(A)(24).

6. Prior to presenting [Adeen's] purchase offer, failed to present and/or have [appellant], the seller of the subject property, sign an agency disclosure statement in violation of R.C. 4735.18(A)(6), misconduct, as that section incorporates R.C. 4735.58(A).

Ohio Real Estate Commission's April 14, 2011 Adjudication Order.

{¶9} The sanctions imposed by the Commission were challenged by Eral and Knight and subsequently reversed on procedural grounds. *See Ohio Div. of Real Estate & Professional Licensing v. Foster*, Cuyahoga C.P. No. CV-11-754631; *Ohio Div. of Real Estate & Professional Licensing v. Knight,* Cuyahoga C.P. No. CV-11-754470; *Ohio Div. of Real Estate v. Knight*, 8th Dist. Cuyahoga No. 98160, 2013-Ohio-2896.

{¶10} On January 15, 2013, in Cuyahoga C.P. No. CV-13-799526, appellant filed a complaint against appellees seeking $10,000 in actual damages based on appellees' fraudulent conduct and willful, wanton, and intentional actions. The parties ultimately agreed to dismiss this case, without prejudice, on July 28, 2015.

{¶11} On July 25, 2016, in Cuyahoga C.P. No. CV-16-866624, appellant filed a complaint against appellees seeking $25,000 plus damages based on appellees' fraudulent conduct and willful, wanton, and intentional actions. Appellees filed a motion to dismiss

appellant's complaint pursuant to Civ.R. 12(B)(6) on September 30, 2016. The trial court denied appellees' motion to dismiss on November 14, 2016.

{¶12} On November 24, 2016, appellees filed an answer and a counterclaim alleging that appellant engaged in frivolous conduct. The trial court referred the case to mediation on December 2, 2016. A mediation hearing was held on February 7, 2017. The parties were unable to resolve the dispute in mediation.

{¶13} On May 21, 2017, appellees filed a motion for summary judgment. Therein, appellees argued that they were entitled to summary judgment based on the applicable four-year statute of limitations because appellant had discovered appellees' allegedly fraudulent conduct when he filed his DOC complaint in May 2007. Appellees further argued that appellant's claims were barred by the doctrine of laches.

{¶14} Appellant filed a brief in opposition to appellees' summary judgment motion on June 15, 2017. He argued that the documentation that he had available to him in 2007 was not sufficient to put him on notice of appellees' fraudulent conduct or the damages he incurred therefrom.

{¶15} Appellees filed a reply brief in support of their summary judgment motion on June 28, 2017. Therein, appellees argued that appellant's deposition testimony and DOC complaint demonstrated that although he may not have known the full extent of the purportedly fraudulent conduct, appellant was aware of the fraud and/or the fact that something was "fishy" as early as 2007.

{¶16} On July 28, 2017, the trial court granted appellees' motion for summary judgment. It is from this judgment that appellant filed the instant appeal on August 25, 2017. He assigns two errors for review:

I. The lower court erred in granting summary judgment and not ruling on the case based on the merits.

II. The trial court failed to recognize that genuine issues of material fact remain.

Because appellant's assignments of error are interrelated and both pertain to the trial court's ruling granting appellees' motion for summary judgment, they will be addressed together.

## II. Law and Analysis

### A. Final Appealable Order

{¶17} As an initial matter, we must determine whether the trial court's judgment is a final appealable order. At the time that appellant filed the instant appeal, appellees' counterclaim for frivolous conduct was still pending.

> An order of a court is a final appealable order only if the requirements of both Civ.R. 54(B), if applicable, and R.C. 2505.02 are met. *Chef Italiano Corp. v. Kent State Univ.*, [44 Ohio St.3d 86, 541 N.E.2d 64, (1989),] syllabus. Moreover, an order which adjudicates one or more but fewer than all the claims or the rights and liabilities of fewer than all the parties must meet the requirements of R.C. 2505.02 and Civ.R. 54(B) in order to be final and appealable. *Noble v. Colwell*, [44 Ohio St.3d 92, 540 N.E.2d 1381 (1989),] syllabus. An order fully adjudicating a claim and accompanied by a Civ.R. 54(B) determination and direction is final and appealable despite the fact that a counterclaim remains pending. *Id*. at 94.
>
> R.C. 2505.02 in relevant part defines a final order as "an order affecting a substantial right in an action which in effect determines the action and prevents a judgment." *Id*. at 88.

*Philpott v. Ernst & Whinney*, 8th Dist. Cuyahoga No. 61203, 1992 Ohio App. LEXIS 5930, 4 (Nov. 25,1992).

{¶18} The Ohio Supreme Court has held that where multiple claims and/or parties exist, an order adjudicating one or more but fewer than all the claims or the rights and liabilities of fewer than all of the parties must meet the requirements of both R.C. 2505.02 and Civ.R. 54(B) in order to constitute a final appealable order. *Noble* at 96. The court explained that Civ.R.

54(B) "makes mandatory the use of the language, 'there is no just reason for delay.' Unless those words appear where multiple claims and/or multiple parties exist, the order is subject to modification and it cannot be either final or appealable." *Id.*, quoting *Jarrett v. Dayton Osteopathic Hosp., Inc.*, 20 Ohio St.3d 77, 486 N.E.2d 99 (1985), and *Whitaker-Merrell Co. v. Geupel Constr. Co.*, 29 Ohio St.2d 184, 280 N.E.2d 922 (1972), syllabus. The court emphasized, however, that a trial court cannot turn an otherwise nonfinal order into a final appealable order by merely reciting the language required under Civ.R. 54(B). *Noble* at *id.*; *Cirino v. Ohio Bur. of Workers' Comp.*, 2016-Ohio-8323, 75 N.E.3d 965, ¶ 124 (8th Dist.).

{¶19} In the instant matter, the trial court's order granting appellees' motion for summary judgment on appellant's claims for fraud fully adjudicates the action and prevents a judgment against appellees, satisfying the requirements of R.C. 2505.02. The trial court's order also included an express determination of "no just reason for delay," satisfying the requirements set forth in Civ.R. 54(B).

{¶20} Accordingly, even though appellees' counterclaim for frivolous conduct remains pending, we find that the trial court's order granting appellees' motion for summary judgment constitutes a final, appealable order because it fully adjudicates appellant's claims and is accompanied by a Civ.R. 54(B) determination and direction. Therefore, we will address the merits of the appeal.

### B. Summary Judgment

{¶21} In his first and second assignments of error, appellant argues that the trial court erred by granting appellees' motion for summary judgment, rather than adjudicating the merits of the case, because there were genuine issues of material fact.

### C. Standard of Review

**{¶22}** Summary judgment, governed by Civ.R. 56, provides for the expedited adjudication of matters where there is no material fact in dispute to be determined at trial. In order to obtain summary judgment, the moving party must show that "(1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion when viewing evidence in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party." *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996), citing *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 219, 631 N.E.2d 150 (1994).

**{¶23}** The moving party has the initial responsibility of establishing that it is entitled to summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). "[I]f the moving party meets this burden, summary judgment is appropriate only if the nonmoving party fails to establish the existence of a genuine issue of material fact." *Deutsche Bank Natl. Trust Co. v. Najar*, 8th Dist. Cuyahoga No. 98502, 2013-Ohio-1657, ¶ 16, citing *Dresher* at 293.

**{¶24}** Once a moving party demonstrates no material issue of fact exists for trial and the party is entitled to judgment, the nonmoving party has a duty to come forth with argument and evidence demonstrating a material issue of fact does exist that would preclude judgment as a matter of law. *Dresher* at *id.* Summary judgment is appropriate if the nonmoving party fails to meet this burden. *Id.*

**{¶25}** As noted above, in appellees' motion for summary judgment, appellees argued that appellant's claims were barred by the four-year statute of limitations set forth in R.C. 2305.09 and the doctrine of laches. The trial court granted appellees' motion for summary judgment,

concluding that there was no genuine issue as to any material fact. The trial court did not, however, specify whether its determination was based on the statute of limitations, the doctrine of laches, or both.

### D. Statute of Limitations

**{¶26}** Appellant argues that the trial court erred in granting appellees' summary judgment motion because a genuine issue of material fact exists regarding when the statute of limitations began to run.

**{¶27}** In their motion for summary judgment, appellees argued that the statute of limitations began to run in May 2007 when appellant filed his DOC complaint because the allegations appellant asserted in his DOC complaint demonstrated that he was aware of appellees' purportedly fraudulent conduct. On the other hand, appellant argues that the statute of limitations began to run in April 2011 when the Commission issued its Adjudication Order. After reviewing the record, we agree with appellees.

**{¶28}** Under Ohio law, a claim for fraud is governed by a four-year statute of limitations. *Riddick v. Taylor*, 8th Dist. Cuyahoga No. 105603, 2018-Ohio-171, ¶ 11, citing R.C. 2305.09.

> The four-year limitations period in a fraud claim begins to run "'when the complainant has discovered, or should have discovered in the exercise of reasonable diligence, the alleged fraud.'" *Washburn v. Gvozdanovic*, 1st Dist. Hamilton No. C-160590, 2017-Ohio-2954, ¶ 17, quoting *Vanderlaan v. Pavlik*, 1st Dist. Hamilton No. C-150060, 2015-Ohio-5349, ¶ 13. A person should be aware that a fraud has occurred when the facts that she or he possesses would alert a reasonable person to the possibility of fraud. *Washburn* at *id*.[,] citing *Palm Beach Co. v. Dun & Bradstreet, Inc.*, 106 Ohio App.3d 167, 171, 665 N.E.2d 718 (1st Dist.1995).

*Riddick* at ¶ 12.

> "[T]his standard does not require the victim of the alleged fraud to possess concrete and detailed knowledge, down to the exact penny of damages, of the alleged fraud; rather, the standard requires only facts sufficient to alert a

reasonable person of the *possibility* of fraud." (Emphasis added.) *Palm Beach Co.* [at 171]. "*[C]onstructive* knowledge of facts, rather than *actual* knowledge of their legal significance, is enough to start the statute of limitations running under the discovery rule." (Emphasis sic.) *Flowers v. Walker* (1992), 63 Ohio St.3d 546, 549, 589 N.E.2d 1284.

*Cundall v. U.S. Bank*, 122 Ohio St.3d 188, 2009-Ohio-2523, 909 N.E.2d 1244, ¶ 30.

{¶29} In the instant matter, appellant asserts that he filed his DOC complaint in May 2007 based "upon his suspicion of potential wrongdoing by his brother [Eral]." Appellant's brief at 10. He argues that his suspicion, however, did not constitute a cognizable event that triggered the running of the statute of limitations because he was unable to discover his cause of action for fraud or verify his suspicions of wrongdoing at that time. Appellant argues that the statute of limitations did not begin to run until April 2011, when the Commission issued its Adjudication Order validating his suspicions. Appellant's argument is misplaced and belied by the record.

{¶30} The allegations appellant asserted in his May 2007 DOC complaint demonstrate that he had, in fact, discovered appellees' fraudulent conduct and the basis of his injuries at that time. As noted above, appellant alleged in his DOC complaint that Eral was not loyal to him or his interests, did not provide him with an agency disclosure form or copies of paperwork that he signed or requested, lied to him about the transaction, changed a form or document without his permission, tried to sell the property without his consent, failed to disclose his relationship with another party, and failed to follow his instructions. Appellant asserted that he examined the closing documents and noticed that the amount he was receiving from the transaction was incorrect and that the buyer's name had been changed. Appellant alleged that he had a verbal agreement with Eral under which Eral agreed to give him some of the money he earned from his commission, and that Eral refused to honor this verbal agreement. Appellant discovered that a

new purchase agreement had been executed without his knowledge or consent, and that his name had been forged on the new purchase agreement. Appellant inquired about these discoveries by contacting Eral, consulting with an attorney, and filing his DOC complaint.

**{¶31}** In his appellate brief, appellant acknowledges that in 2007, he "did note some discrepancies in the paperwork" and he "knew that he received $10,000.00 less than what he was promised by his brother [Eral]." Appellant's brief at 10, 12.

**{¶32}** For all of the foregoing reasons, it is evident that appellant did, in fact, discover the alleged fraud prior to the filing of his DOC complaint in May 2007.

**{¶33}** Nevertheless, appellant argues that "[b]ased on the limited amount of information available to him, [he] had an incomplete picture of a cause of action for fraud in 2007." Appellant's brief at 10. Appellant asserts that he did not have the necessary paperwork needed to discover the full extent of his cause of action. Specifically, appellant contends that in 2007, he (1) did not receive the "modification page" that supplemented the purchase agreement and he was not aware that the modification page existed; (2) received a real estate purchase agreement that was fraudulent and contained little information about the sale and appellant's obligations; and (3) received a partial settlement statement that was fraudulent, had not been used to finalize the transaction at closing, and did not contain information about the costs that the buyer and seller were responsible for. Appellant's argument is misplaced.

**{¶34}** The Ohio Supreme Court has recognized that an injured person need not be aware of the full extent of his or her injury before there is a "cognizable event" triggering the statute of limitations. *Zimmie v. Calfee, Halter & Griswold*, 43 Ohio St.3d 54, 58, 538 N.E.2d 398 (1989), citing *Allenius v. Thomas*, 42 Ohio St.3d 131, 538 N.E.2d 93 (1989). "Instead, it is enough that some noteworthy event, the cognizable event, has occurred which does or should

alert a reasonable person" that a wrong has taken place. *Zimmie* at 58; *see Beavercreek Local Schools v. Basic, Inc.*, 71 Ohio App.3d 669, 689, 595 N.E.2d 360 (2d Dist.1991) ("an accrual of a cause of action is not delayed until the full extent of the resulting damage is known."); *see also Columbus Bd. of Edn. v. Armstrong World*, 89 Ohio App.3d 846, 851, 627 N.E.2d 1033 (10th Dist.1993) (the discovery rule states that the cause of action accrues when the plaintiff knew or, in the exercise of reasonable diligence, should have known, of the injury).

**{¶35}** In this case, appellant may not have been aware of the *full extent* of appellees' fraudulent conduct or his injuries until the Commission issued its April 2011 Adjudication Order, which contained findings of fact and conclusions of law and specified Eral's violations of R.C. 4735.18. However, the record before this court, including appellant's DOC complaint, clearly reflects that appellant had discovered appellees' fraudulent conduct and the basis for his injuries in May 2007.

**{¶36}** Although appellant discovered appellees' fraudulent conduct and the basis for his injuries in May 2007, he inexplicably waited more than five years before filing his original complaint against appellees on January 15, 2013. When appellant filed his original complaint, the four-year statute of limitations had expired. Accordingly, appellant's claims were time-barred, and the trial court properly granted summary judgment in appellees' favor.

### E. Laches

**{¶37}** Appellant further argues that the doctrine of laches is inapplicable in this case.

> Laches is an equitable defense. It applies where a party fails "'to assert a right for an unreasonable and unexplained length of time, under circumstances prejudicial to the adverse party.'" *Connin v. Bailey*, 15 Ohio St.3d 34, 35, 472 N.E.2d 328 (1984), quoting *Smith v. Smith*, 107 Ohio App. 440, 443-444, 146 N.E.2d 454 (8th Dist.1957); *see also Sobin v. Lim*, 8th Dist. Cuyahoga No. 97952, 2012-Ohio-5544, ¶ 17, 984 N.E.2d 335 ("Laches is an equitable doctrine that bars

the delayed assertion of claims when the delay has caused circumstances to change so much that it is no longer just to grant the plaintiff's claim.").

The party invoking the doctrine of laches must establish four elements by a preponderance of the evidence: (1) an unreasonable delay or lapse of time in asserting a right; (2) the absence of an excuse for the delay; (3) knowledge, actual or constructive, of the injury or wrong; and (4) prejudice to the other party. *Sobin* at ¶ 17; *Portage Cty. Bd. of Comm. v. Akron*, 109 Ohio St.3d 106, 2006-Ohio-954, 846 N.E.2d 478, ¶ 81. "Because laches is a component of equity, we review claimed error in the application of the doctrine for an abuse of discretion." *Sobin* at ¶ 17, citing *Payne* [*v. Cartee*, 111 Ohio App.3d 580, 590, 676 N.E.2d 946 (4th Dist.1996)].

*In re S.K.L.*, 2015-Ohio-2860, 39 N.E.3d 825, ¶ 38-39 (8th Dist.).

**{¶38}** In this case, based on our determination that appellant's claims were barred by the four-year statute of limitations, we need not consider, as an alternative basis for granting summary judgment in favor of appellees, whether appellant's claims were also barred by the doctrine of laches.

**{¶39}** For all of the foregoing reasons, appellant's assignments of error are overruled.

### III. Conclusion

**{¶40}** After thoroughly reviewing the record, and construing the evidence most strongly in appellant's favor as we must under Civ.R. 56, we conclude that reasonable minds can come to but one conclusion, with that conclusion being adverse to appellant. There remains no genuine issue of material fact as to when the statute of limitations period began to run on appellant's claims. Accordingly, appellees were entitled to judgment as a matter of law, and the trial court properly granted appellees' motion for summary judgment.

**{¶41}** Judgment affirmed.

It is ordered that appellees recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


FRANK D. CELEBREZZE, JR., JUDGE

TIM McCORMACK, P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR
KEY WORDS: